IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 4:08CR3086 |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| LEON N. STANLEY, | ) | |
| | ) | |
| Defendant. | ) | |

The defendant has moved to suppress evidence and statements obtained by Nebraska State Patrol ("NSP") officers following a traffic stop of defendant's vehicle on March 8, 2008. (Filing Nos. 23 & 25). The defendant claims that after the stop was complete, NSP Trooper Jay Poppe seized and detained the defendant for an unreasonable length of time and performed a warrantless search of the defendant's vehicle without the defendant's consent or probable cause. The defendant claims all evidence obtained as a result of his unlawful detention, including all evidence found or observed by NSP officers during the search of defendant's vehicle, and all statements made by the defendant at the roadway and during custodial interrogation following defendant's arrest, must be suppressed as fruit of the illegal detention. The defendant further claims he unambiguously and unequivocally invoked his right to counsel prior to the custodial interrogation conducted after his arrest, and all statements made in response to questioning by Trooper Poppe and NSP Sergeant L. Connelly must be suppressed.

At the close of the hearing, Magistrate Judge Piester asked the parties to submit supplemental briefs on the following two issues:

> First, does the defendant have a right to invoke his right to counsel when he's only in a detention status? And how effective is it when he does so?

> Second, if he does say he wants a lawyer, unequivocally, during a period
> of detention, does that translate into an unequivocal invocation of the
> right to counsel after his arrest a few minutes later?

Filing No. 44, at CM/ECF p. 63.

The parties have now briefed these additional issues. As discussed below, upon review of the evidence and the parties' arguments, the defendant's motion to suppress will be denied.

## FINDINGS OF FACT

The evidentiary hearing on defendant's motion to suppress was held before Magistrate Judge Piester on June 5, 2009, and was fully submitted on June 13, 2009. Judge Piester has not filed a report and recommendation on defendant's motion, and he is unable to do so at this time. By order of the court, the parties were advised that absent an objection filed before July 8, 2009, the undersigned judge intended to resolve the defendant's motion based on the record developed before Judge Piester. Filing No. 43. Neither party has filed an objection. Accordingly, the following sets forth my factual findings based on the evidence received by Judge Piester on June 5, 2009.

At approximately 11:45 a.m. on March 8, 2008, Trooper Poppe was in his patrol vehicle and parked in the median at mile marker 404 of Interstate 80 near Lincoln, Nebraska, and he was clocking westbound traffic when he observed a newer model Cadillac traveling 67 miles per hour in a 55 mile per hour construction zone. Trooper Poppe activated his lights to initiate a traffic stop which, in turn, started his in-car video camera. The court's evidentiary record includes a videotape of the events occurring from the time the traffic stop was initiated through transport to the

NSP traffic headquarters in Lincoln. The videotape also includes defendant's questioning following his arrest. See ex. 1.

The defendant pulled to the shoulder and parked, and Trooper Poppe parked his patrol vehicle behind the defendant's vehicle. The officer exited the patrol vehicle, approached the passenger side window of the defendant's vehicle, and asked the defendant for his driver's license and vehicle registration. The defendant handed Trooper Poppe his driver's licence and a rental car agreement. While still standing at the passenger side window, Trooper Poppe asked the defendant to explain where the defendant was coming from and where he was going. The defendant stated he was coming from Chicago, Illinois and was heading for Omaha, Colorado. When the officer asked if there was an Omaha, Colorado, the defendant stared straight ahead and affirmed that Omaha, Colorado exists. Trooper Poppe asked if the defendant was sure he was heading for Omaha, Colorado, not Denver, Colorado, and the defendant quickly said he was going to Denver, Colorado.

Based on his training and experience, Trooper Poppe knew drugs arriving from sources in Mexico, Texas, Arizona, and California often converge in Denver, Colorado, and are picked up there for delivery to either Detroit, Michigan or Chicago, Illinois.

Trooper Poppe returned to his patrol vehicle with the defendant's license and the rental agreement. The defendant remained seated in the driver's seat of the Cadillac. The officer contacted he communications center to determine if defendant's drivers license was valid, to run the licence plates on the stopped vehicle, and to check defendant's criminal history. The communications center reported the Cadillac was a rental vehicle, the defendant's Georgia driver's license was valid, and the defendant had a criminal history and was arrested two to three months before for possession of narcotics with intent to deliver.

Trooper Poppe examined the rental agreement and noticed the cost for the nine-day Cadillac rental was extremely low. He also noticed the vehicle was rented near Atlanta, Georgia on March 6, 2008 at 5:30 p.m., (see ex. 6), which based on the defendant's description of his trip, meant the defendant had traveled from Atlanta to Chicago to Lincoln, Nebraska in less than a day and a half, and intended to continue on to Denver.

Trooper Poppe completed the warning ticket, (see ex. 2), and again approached the passenger side of the defendant's vehicle. Only twelve minutes elapsed between the beginning of the stop and handing the defendant his ticket. As the officer was walking toward the Cadillac, he noticed the vehicle had aftermarket wheels and tires, meaning the wheels and tires placed on the vehicle by the manufacturer had been removed and replaced with private label wheels and tires. See exs. 3 & 4. Trooper Poppe, an NSP road trooper with nine years of experience and hundreds of rental car traffic stops, had never seen a rental vehicle with aftermarket wheels and tires. Trooper Poppe also has a associate's degree in automotive and diesel technology and is an AC-certified automotive technician. Based on his automotive background and education, he knew each aftermarket wheel on the Cadillac, not including the tire, would cost a thousand dollars, and that aftermarket wheels and tires affect the antilock brake system and traction control of a vehicle. Trooper Poppe could think of no reason why a rental company would expend large amounts of money to remove the original wheels and replace them with aftermarket wheels, thereby voiding the warranty on a brand-new Cadillac.

Trooper Poppe approached the passenger side window, handed the defendant his drivers license, rental agreement, and a warning ticket. As he had during his first conversation with the officer, the defendant did not make eye contact with Trooper Poppe. While handing the documents to the defendant, Trooper Poppe noticed the vehicle had two global positioning sensors ("GPS"); one as part of the vehicle's standard equipment, and a "Tom-Tom" suction-cupped to the windshield. Since the

-4-

defendant lived in the Atlanta, Georgia area, and therefore did not fly into Atlanta and then rent a vehicle without knowing if it would be equipped with a GPS, the officer could not understand why the defendant would have two GPS systems in the vehicle.

After handing the defendant a warning ticket, the officer continued to question the defendant. Trooper Poppe asked for more details regarding the defendant's trip itinerary. The defendant explained his daughter lives in Chicago and he visited her there for her birthday, but did not stay overnight. Instead, according to the defendant, he drove through the night to go to Denver. The trooper considered this itinerary highly unusual because he spent so little time with his daughter, and was driving an area spanning from Atlanta, to Chicago, and then through the center of the United States in a day and a half without slowing except to get gas.

The defendant then stated, "this is all because of what happened in Missouri, isn't it?" When the officer asked what happened in Missouri, the defendant explained he was arrested with fourteen pounds of marijuana. The defendant stated he was staying with "people" in Denver because he did not want to stay at a hotel before attending his court date in Missouri.

Trooper Poppe asked for consent to search the vehicle. The defendant said, "No." The officer explained he had reason to believe the defendant was involved in criminal activity, and therefore the defendant would be detained until a canine arrived. The defendant was told to exit the patrol vehicle. The defendant complied, but stated his rights were being violated and the officer had no probable cause to hold him. The defendant demanded an attorney several times while being detained awaiting the arrival of a drug dog. Trooper Poppe responded that the defendant did not have any right to counsel because he was not under arrest, but was being detained based on reasonable suspicion. The defendant was questioned less than five minutes from the time he received his warning ticket until the officer decided a drug dog should be summoned to the scene.

Trooper Poppe promptly requested a canine. Sergeant Connelly and his canine arrived at the scene within thirty minutes after the defendant received his warning ticket. The canine alerted to the trunk area and indicated on the driver's door. Sergeant Stanley advised the defendant that the canine indicated to the vehicle and the officers were going to perform a probable cause search of the vehicle. A gun was found during the vehicle search.

The defendant was placed under arrest and handcuffed. Trooper Poppe read the defendant his Miranda rights from an NSP Miranda card. After the rights were read, the defendant responded that he had already requested, and been denied, a lawyer. The officer explained he was denied a lawyer while being detained, but now he is now under arrest. The defendant stated he understood his rights.

The defendant was transported to NSP traffic headquarters. No questioning occurred en route.

The defendant was placed in an interview room at the traffic headquarters. Before any questioning began, Trooper Poppe reminded the defendant that he was read his rights at the roadside, and explained the defendant was facing serious charges. The officer stated, "You don't have to talk to us if you don't want to." The defendant began to talk, particularly about his pending court hearing in Missouri. Trooper Poppe interjected, "Are you willing to talk to us?" The defendant responded, "I'll talk to you right now." The officer asked, "Without an attorney?" The defendant indicated he was willing to answer questions without a lawyer present. Ex. 1, at 13:19-13:24.

The officers continued to question the defendant until the defendant's responses became repetitive. The officers' tone was courteous and professional throughout. The defendant never requested an attorney, never asked for the questioning to stop, and never refused to answer a question. The defendant did not

appear intoxicated or under the influence of any drug, and he provided appropriate responses to the questions asked. At the conclusion of the interview, the defendant was transported to the Lancaster County correctional facility.

LEGAL ANALYSIS

The defendant does not challenge his traffic stop, or his detention and questioning prior to receiving a warning ticket. The defendant claims, however, that he was unlawfully detained and questioned after the officer handed him a warning ticket and while awaiting the arrival of a canine.

When an officer completes a routine traffic stop and decides to let the offending driver depart with a ticket, a warning, or an all clear, the Fourth Amendment limits any further detention of the driver. U.S. v. Oliver, 550 F.3d 734, 738 (8th Cir. 2008). After the defendant received his warning ticket, Trooper Poppe remained at the passenger window of defendant's vehicle asking questions. The defendant was not asked if he was willing to answer additional questions and was not told he was free to leave. There is no evidence the defendant's continued detention once the traffic stop was complete was consensual.

However, a non-consensual detention does not violate the Fourth Amendment if the officer has a sufficient basis to reasonably suspect the motorist is engaged in criminal activity. U.S. v. Eustaquio, 198 F.3d 1068 (8th Cir. 1999). "An officer may expand the scope of a traffic stop beyond the initial reason for the stop and prolong the detention if the driver's responses and the circumstances give rise to a reasonable suspicion that criminal activity unrelated to the stop is afoot." U.S. v. Chavez Loya, 528 F.3d 546 (8th Cir. 2008). "In evaluating whether a set of facts would give rise to reasonable suspicion, this court must look at the totality of the circumstances and not just each independent fact standing alone. Furthermore, the court may consider

any added meaning that certain conduct might suggest to experienced officers in the field, trained in the observation of criminal activity." United States v. Jones, 269 F.3d 919, 926-927 (8th Cir. 2001).

By the time Trooper Poppe handed the defendant his driver's license, rental vehicle papers, and warning ticket, the officer was aware the defendant had previously been arrested for a drug-related crime, and that the defendant was now on an essentially nonstop drive from Atlanta to Chicago to Denver. When asked about the trip, the defendant could not accurately state where he was going. He initially stated he was heading to Omaha, Colorado, affirmed upon questioning that "Omaha, Colorado" exists, and then, when the officer did not sound convinced, quickly changed his story to state he was going to Denver, Colorado. The officer had noticed the defendant was driving a rental vehicle with aftermarket wheels and tires, and considered this highly unusual since the private label wheels are not only expensive but void the manufacturer's warranty. These facts, all known to the officer before the defendant was given a warning ticket, provided Trooper Poppe with reasonable suspicion to believe the defendant was engaging in criminal activity. The officer did not violate the Fourth Amendment by briefly detaining the defendant to ask additional questions after the traffic stop was over.

The officer's conversation with the defendant, and his observations of the vehicle after the stop was over served to confirm, not dispel the officer's suspicions. The officer noticed that for no apparent reason, the vehicle was equipped with two GPS devices; the one installed as part of the vehicle's standard equipment, and a "Tom-Tom" suction-cupped to the windshield. Although the officer knew nothing about defendant's pending Missouri charges, and initiated no questioning about those charges, the defendant offered he was facing charges in that state for transporting marijuana, and claimed, implausibly, that he was driving from Chicago to Denver to stay with his "people" to avoid staying in a motel before appearing in the Missouri court. The additional questioning following the completion of the stop and before

calling for a drug dog lasted less than five minutes. Based on the totality of the information known to Trooper Poppe, the officer did not unduly prolong the defendant's detention by asking additional questions following the traffic stop, and the officer had reasonable suspicion justifying his further detention of the defendant while a drug dog was summoned to the scene. U.S. v. Suitt, 2009 WL 1794695 (8th Cir. June 24, 2009)(holding the officer did not violate the Fourth Amendment by asking a defendant more questions after termination of traffic stop and conducting a dog sniff of defendant's vehicle, where the defendant repeatedly gave hesitant, evasive, and incomplete answers to the officer's questions about defendant's travel plans).

Trooper Poppe promptly called for a drug dog to arrive at the scene. The dog arrived within thirty minutes after the traffic stop was complete. Waiting thirty minutes for a drug dog to arrive is not an unreasonable detention in violation of the Fourth Amendment. See e.g., U.S. v. Lyons, 486 F.3d 367, 372 (8th Cir. 2007)(holding a the thirty-one minute wait for a drug dog's arrival at a traffic stop was not excessive); United States v. White, 42 F.3d 457, 460 (8th Cir. 1994) (finding delay of one hour and twenty minutes for arrival of drug dog reasonable).

While waiting for the drug dog, the defendant repeatedly demanded an attorney. Trooper Poppe explained the defendant did not have the right to counsel because he was detained, not under arrest. After his arrest, the defendant was advised of his Miranda rights. The defendant responded that he had already asked for a lawyer, and the officer had refused his request. Trooper Poppe explained the defendant was only detained when he previously asked for a lawyer, but now he is under arrest. Before any custodial interrogation began, the officer reminded the defendant that he received his Miranda warnings at the roadside, further explaining he did not have to talk with the officers and confirming the defendant was willing to answer the officer's questions without an attorney present. The defendant willingly,

almost eagerly, talked with the officers. The defendant never requested an attorney after his arrest and before or during his custodial interrogation.

The defendant's request for an attorney prior to arrest cannot be construed as invoking the right to counsel for Miranda purposes. "We have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than "custodial interrogation. . . ." McNeil v. Wisconsin, 501 U.S. 171, 182 n. 3. (1991). Although the defendant requested an attorney while he was detained, he had no right to counsel at that time. The defendant was not in custody and was not being interrogated while awaiting the arrival of a drug dog, and Miranda warnings are unnecessary in such circumstances. United States v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003). The defendant's purported invocation of a right to counsel during detention cannot be construed as invoking the right to counsel post-arrest. U.S. v. LaGrone, 43 F.3d 332, 338-39 (7th Cir. 1994) (holding that asking to call an attorney for advice on whether to consent to a search did not invoke any right to counsel because a request for consent to search is not interrogation). See also, U.S. v. Thompson, 35 F.3d 100 (2d Cir. 1994) (holding that an attorney's act of seeking records and filing a form "Notice of Entry of Appearance as Attorney or Representative" with the INS did not invoke the client's right not to respond to custodial interrogation without counsel present); Alston v. Redman, 34 F.3d 1237, 1249 (3d Cir. 1994) (holding that a pretrial detainee's act of signing a form letter submitted to his warden which stated he did not wish to speak to law enforcement personnel without a lawyer was not an effective invocation of the Fifth Amendment right to counsel, in part because "no interrogation was impending or imminent"); U.S. v. Wright, 962 F.2d 953, 955 (9th Cir. 1992) (holding that defense counsel's statement that she wished to be present during any future interview of her client did not invoke the client's Fifth Amendment right to counsel).

Once the defendant was arrested, he was advised of his Miranda rights, including his right to counsel, but chose to answer questions without a lawyer present.

The defendant is an adult with prior experience in the criminal justice system. Based on a review of the videotape evidence, the defendant did not appear under the influence of any drugs or alcohol, he was clearly not intimidated by the circumstances of his traffic stop or the NSP officers, and he was not acceding to the actions and authority of the NSP officers when he answered their questions. The defendant's Fifth Amendment rights were not violated. His responses to roadside questioning, and during custodial interrogation following his arrest will not be suppressed.

Accordingly,

IT IS ORDERED that defendant's motions to suppress, (filing nos. 23 & 25), are denied.

DATED this 13th day of July, 2009.

BY THE COURT:

*s/Richard G. Kopf*
United States District Judge